# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

NORFOLK SOUTHERN RAILWAY  )
COMPANY,  )
 )
    Plaintiff/Counter-Defendant,  )
 )
v.  )  CV416-265
 )
JUDGE WAREHOUSING, LLC,  )
 )
    Defendant/Counter-Claimant.  )

FILED
Scott L. Poff, Clerk
United States District Court

By jburrell at 3:27 pm, Apr 12, 2018

## **ORDER**

Interstate rail carrier Norfolk Southern Railway Company sued defendant Judge Warehousing, LLC, for unpaid rail car demurrage[1] for failing to return possession of certain rail cars delivered into defendant's possession within an allotted time frame. Doc. 1 at 3 (seeking $951,025.00 in demurrage charges pursuant to Norfolk Southern's demurrage tariff).

---

[1] Norfolk Southern operates as an interstate rail carrier subject to the jurisdiction of the U.S. Surface Transportation Board ("STB") and is governed by the provisions of the Interstate Commerce Act, 49 U.S.C. § 10101 *et seq*. "Demurrage" is a charge a rail-car receiver (like Judge) incurs when the cars are detained beyond a specified period of time for loading or unloading, which period is known as "free time," as prescribed in the rail carrier's applicable tariffs. *Ill. Cent. R. Co. v. S. Tec Dev. Warehouse, Inc.*, 337 F.3d 813, 815 n. 1 (7th Cir. 2003). Demurrage compensates the rail carrier for expenses from, and penalizes the receiver for, the undue detention of the carrier's rail cars. 49 C.F.R. § 1333.1. Its purpose "is to expedite the loading and unloading of cars, thus facilitating the flow of commerce, which is in the public interest." *S. Tec Dev. Warehouse*, 337 F.3d at 815 n. 1 (cite and quote omitted).

Judge counterclaimed for lost profits, contending that Norfolk Southern had actively participated in negotiations to expand the warehouse that Judge was renting to accommodate additional rail freight, including a particular curved portion of the loading dock, which it approved as meeting as its needs. Doc. 6 at 6-8. However, when Judge sought to use the curved loading dock in February 2012, Norfolk Southern refused and delivered cars only to the straight portion of the loading dock for two years. *Id.* at 8. Two year later, without explanation, Norfolk Southern began delivering rail cars to the entire loading dock. *Id.* This meant that for two years Judge received fewer cars than it otherwise could have, and had expected, to receive. *Id.* (claiming more than $75,000 in damages).

Norfolk Southern conducted discovery on the counterclaim, including deposing Judge's corporate representative. Doc. 59 at 2; *see also id.* at 5-7 (complaining about the preparedness of Judge's witness). Judge disclosed a lengthy list of customers but identified only one entity (FMS North America) that it "would have solicited business from, but for the actions of Norfolk Southern," and it failed to produce acceptable financial statements to demonstrate its overall profitability during the

relevant time frame. *Id.* After the close of discovery, at Norfolk Southern's behest, Judge identified 34 customers it "began to solicit after [Norfolk Southern] began spotting the curved portion of its track," and produced a consolidated financial statement demonstrating the overall profitability of its umbrella parent company. Doc. 63 at 1, 12 & 16-17 (Judge does not create its own statements or tax returns, so it produced its holding company, The Judge Organization's, consolidated statement of operation at Norfolk Southern's request). Norfolk asks that Judge be precluded from using this late-disclosed information or that discovery be reopened so it can fully suss out Judge's counterclaim. Doc. 59 at 2. It also criticizes Judge's corporate representative's deposition preparedness and asks that the deposition be reopened and/or another witness produced. *Id.* at 5-8, 10 & 12.

Because Judge maintains that the financial statement is irrelevant to its lost profits claim, indicating its intention to forgo introducing the statement or relying on it at summary judgment or trial, doc. 63 at 18, Norfolk Southern's motion to preclude Judge from relying on the financial statement generated after close of discovery is thus **GRANTED as unopposed**.

As to the customer list, Judge concedes that it is unable to -- and has no intention of -- pointing to any single, unique contract that it was deprived of entering with any of the identified 34 customers. *See* doc. 63 at 12 (describing the list as reflecting the "customers it began to solicit" after it gained the full use of its curved rail) & 22 (explaining that "there are no specific [lost business] opportunities" it can point to, so its claim must be based instead on "its [unquantified] inability to *develop* additional opportunities"). The Court is unable to determine precisely the effect of the list of 34 customers (only one of which, FMS, was specifically earlier identified as a lost-business opportunity) on Judge's counterclaim or Norfolk Southern's defense.

Here, Judge believed it was entering a period of increased profitability with the new curved loading dock, and after being able to leverage its additional capacity, it did increase its profits. *See* doc. 6 at 6-8. But again, given Judge's contention that it doesn't need specifics to prove up its counterclaim, it is unclear what utility the mere list of 34 customers offers or what effect that list might have (now that it has been generated) on Judge's corporate witness's testimony. *See Lowe's Home Centers, Inc. v. Gen. Elec. Co.*, 381 F.3d 1091, 1096 (11th Cir.

2004) ("As a general rule, lost profits of a commercial venture are not recoverable as they are too speculative, remote, and uncertain," unless they "are capable of 'reasonably accurate computation,' such as when the damages belong to 'an established business with clearly defined business experience as to profit and loss.'") (quotes and cites omitted).

What is clear, however, is that the parties have demonstrably failed to meaningfully meet and confer on these issues.[2] The first issue was moot, and had the parties talked that would have been obvious. The second issue too could have been resolved without court intervention. After all, Norfolk Southern has long known about Judge's lost profits opportunity with "FMS" and yet (despite arguing that it absolutely needs to do so with the other 33 identified businesses) declined to further press the witness *or* request any third party discovery to determine whether FMS could have or would have contracted with Judge. And Judge maintains that specific examples are

---

[2] Requiring meaningful consultation can lead to informal resolution and thus conservation of court resources. *Avera v. United Airlines, Inc.*, 465 F. App'x 855, 858-59 (11th Cir. 2012) (magistrate judge did not abuse his discretion in denying, without prejudice, plaintiff's motion to compel discovery where plaintiff had not sought to resolve his discovery dispute with defendant before filing the motion); *Jo Ann Howard & Associates, P.C. v. Cassity*, 2012 WL 1247271, at *8 (E.D. Mo. Apr. 13, 2012) (rejecting compulsion request in part because "the failure of the parties to communicate *materially* impeded their resolution of this matter.") (emphasis added).

unavailable, so the entire list might be irrelevant to Norfolk Southern's defense after all.

That is to say, all this could have been discussed by phone or in person, without hyperbole and without accusations of hiding the ball or ambush. *See* S.D. Ga. L. R. 26.5 ("Counsel are reminded that Fed. R. Civ. P. 26(c) [ ] require[s] a party seeking a protective order or moving to compel discovery to certify that a good faith effort has been made to resolve the dispute before coming to court."); *Scruggs v. Int'l Paper Co.*, 2012 WL 1899405, at *2 (S.D. Ga. May 24, 2012) (noting that "the lawyers here are professionals" and thus capable of fulfilling their Local Rule 26.5 duty to fully meet and confer before seeking the court's intercession). They must do so, and they may return to this Court only when they have fully exhausted their good faith attempt at compromise. Put another way, the parties **SHALL** in good faith (at least by phone if not in person) attempt to resolve movant's objections without further Court involvement. Fees will be assessed for any bad faith shown.[3]

---

[3] The parties are reminded that

> The scope of discovery under Fed. R. Civ. P. 26(b)(1) is broad and includes discovery regarding any matter, not privileged, which is relevant to the claims or defense of any party involved in the pending action. Those resisting discovery must show specifically how the objected-to request is unreasonable

In sum, plaintiff's motion (doc. 59) is **GRANTED** as to the financial statement and **DENIED without prejudice** as to the customer list and reopening of the corporate witness's deposition, until after the parties have met their meet and confer obligation.

**SO ORDERED,** this __12th__ day of April, 2018.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

or otherwise unduly burdensome.

*Claims and defenses* determine discovery's scope. Evidence is relevant if it has any tendency to make the existence of any fact or consequence more or less probable than it would be without the evidence.

*Daniel Def., Inc. v. Remington Arms Co., LLC*, 2015 WL 6142883 at * 2 (S.D. Ga. Oct. 19, 2015) (cites and quotes omitted).

"The standard for what constitutes relevant evidence is a low one." *United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002); *McCleod v. Nat'l R.R. Passenger Corp.*, 2014 WL 1616414 at * 3 (S.D. Ga. Apr. 22, 2014) ("Rule 26, quite simply, sets forth a *very* low threshold for relevancy, and thus, the court is inclined to err in favor of discovery rather than against it."). The recent changes to the Federal Rules of Civil Procedure (in particular, Rule 26), although substantive and substantial, do not change the *definition* of relevance. Instead, they reemphasize and highlight requirements already present in the Rules, like proportionality. *See* Fed. R. Civ. P. 26, advisory committee note (2015) ("Restoring the proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties to consider proportionality. . . ."); *Sibley v. Choice Hotels Int'l*, 2015 WL 9413101 at * 2 (E.D.N.Y. Dec. 22, 2015) ("While proportionality factors have now been incorporated into the Rule 26(b)(1) definition, those factors were already a part of Federal discovery standards, appearing in Rule 26(b)(2)(C)(iii)").