# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

NORFOLK SOUTHERN RAILWAY COMPANY,

    Plaintiff/Counter-Defendant,

v.    CV416-265

JUDGE WAREHOUSING, LLC,

    Defendant/Counter-Claimant.

## **ORDER**

Interstate rail carrier Norfolk Southern Railway Company sued defendant Judge Warehousing, LLC, for unpaid demurrage.[1] Doc. 1 at 3 (seeking $951,025.00 in demurrage charges pursuant to Norfolk Southern's demurrage tariff). Judge counterclaimed for lost profits, allegedly caused by Norfolk Southern's acquiescence to improvements of

---

[1] Norfolk Southern operates as an interstate rail carrier subject to the jurisdiction of the U.S. Surface Transportation Board (the "Board") and is governed by the provisions of the Interstate Commerce Act, 49 U.S.C. § 10101 *et seq*. "Demurrage" is a charge a rail-car receiver (like Judge) incurs when the cars are detained beyond a specified period of time for loading or unloading, which period is known as "free time," as prescribed in the rail carrier's applicable tariffs. *Ill. Cent. R. Co. v. S. Tec Dev. Warehouse, Inc.*, 337 F.3d 813, 815 n. 1 (7th Cir. 2003). Demurrage compensates the rail carrier for expenses from and penalizes the receiver for the undue detention of its rail cars. 49 C.F.R. § 1333.1. Its purpose "is to expedite the loading and unloading of cars, thus facilitating the flow of commerce, which is in the public interest." *S. Tec Dev. Warehouse*, 337 F.3d at 815 n. 1 (cite and quote omitted).

Judge's warehouse and subsequent refusal to use those same improvements. Doc. 6 at 6-8. The refusal meant that for two years Judge serviced fewer cars than it otherwise could have and, indeed, expected to. *Id.* (claiming more than $75,000 in damages).

The instant dispute principally concerns discovery related to the calculation of the demurrage. *See, e.g.,* doc. 61 at 3-11. During the parties' commercial relationship, Norfolk Southern sent Judge monthly invoices for demurrage, which were off-set by various credits. *See* doc. 61-11 (an example demurrage invoice, reflecting "credits," "svc credits," and "adj credits"). Norfolk Southern produced those invoices, which include information about the basis for the demurrage charge (*i.e.*, the time the rail cars were delivered to Judge and the time they were returned to Norfolk Southern). The invoices also reflect the off-setting credits, although the *bases* for those credits are not clear from the invoices.[2]

---

[2] Judge's motion explains:

> NS begins its demurrage calculation by determining the number of days each rail car has been available for unloading and assigning demurrage for each day in excess of the two "free" days. It then determines which portion of this gross amount of demurrage should *not* be collected (for example, because it was caused by NS) and gives a credit in this amount. Therefore, in order to know whether NS's bills are accurate, one must be able to assess whether NS has properly credited Judge[.]

2

Judge seeks, though its motion, to compel production of the bases and calculations for those off-setting credits. Norfolk Southern contends that one of the types credits Judge seeks discovery on is merely hypothetical; *i.e.,* Judge asks Norfolk Southern to calculate the credits it *would have been entitled to* had it agreed to the terms of Norfolk Southern's "Pacesetter" program.[3] Norfolk Southern also objects to the implication that it should produce the records underlying its invoices,

---

[ . . . ]

> NS issues two types of relief from demurrage in the form of credits (hereinafter, "relief" or "credits"). First, in an effort to offset the effects of bunching,[4] NS issues ETA credits, which are given when rail cars are delivered earlier or later than expected. Second, NS issues credits for demurrage that is caused by rail road error. When a customer disputes some aspect of NS's service -- for example whether NS failed to deliver a car available for placement -- NS investigates and determines whether it agrees that rail road error occurred and then issues credits as it deems appropriate.
>
> > FN 4. "Bunching occurs where the railroad delivers cars in numbers exceeding the anticipated, daily rate of delivery." *Cleveland Elec. Illuminating Co. v. Interstate Commerce [Commission]*, 685 F.2d 170, 172 n. 2 (6th Cir. 1982).
>
> Doc. 61 at 4-5 (internal citations and footnotes omitted).

[3] Judge's position on these credits is not as dubious as Norfolk Southern makes it sound. *See* doc. 67 at 18. The application of credits, or not, offsets the damages Norfolk Southern is (even arguably) entitled to. Alternatively, if Norfolk Southern illegitimately withheld credits, Judge would be entitled to recover those amounts as damages of its own. The exact character and viability of the parties' positions is beyond the scope of this Order. The general contours of the dispute, however, are necessary to understand the scope of permissible discovery.

given that Judge has apparently already calculated the credits (or the lack of them) that it disputes.

I.   Analysis

A. Demurrage Calculations

Discovery, in general, may encompass "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Norfolk Southern does not dispute that the information Judge seeks is relevant, but it does raise (perhaps belated) objections that the burden of production is disproportional to the need.

There is no question that that the party resisting discovery has the initial burden of revealing the scope of discoverable information and, if appropriate, asserting and explaining the burden of production. *See, e.g., Henderson v. Holiday CVS, L.L.C.,* 269 F.R.D. 682, 686 (S.D. Fla. 2010) ("[T]he party resisting discovery must demonstrate specifically how the

objected-to request is unreasonably or otherwise unduly burdensome."). Judge's frustration, and the vehemence of its assertions, can largely be attributed to Norfolk Southern's failure to discharge that burden. Judge clearly requested an explanation of "the manner in which Norfolk Southern has calculated the amount of demurrage allegedly owed by defendants, including the identity of each rail car and freight shipment that allegedly incurred demurrage and the date of actual or constructive placement of each such rail car and its release date." Doc. 61-5 at 1. Norfolk Southern responded to that interrogatory by inviting Judge to examine its publicly available tariffs and approximately 20,000 pages of produced documents. *Id*. at 2. The invoices discussed above certainly clarify *some* of the calculations involved, but the attribution of credits in specific cases remains opaque. Judge specified its query in supplemental interrogatories. *See* doc. 61-6 at 1-2. Norfolk Southern reiterated its response that "the date, amount, *and reason* service credits were applied to invoices which were subsequently reduced can be obtained from the documents [already] produced[.]" *Id*. (emphasis added). Reiterating vague references to voluminous documents is not exemplary of the discovery practices the Court expects from its practitioners.

Testimony from Norfolk Southern employees did nothing to clarify the calculations. Indeed, Norfolk Southern's witness explained that it was "impossible" to tell, from Norfolk Southern's produced demurrage summary, the exact nature of the credits applied (as the records contain only the "aggregate" number of credits given for each car). Credits, as far as can be discerned from Norfolk Southern's document production and designated witness testimony, are assigned without explanation, definition, or reference to any objective record. Doc. 61 at 7 (citing Deposition of Janea Parr at 82, 176-77, Deposition of Vincent Cape at 9, 44-45, 97, 108-09). As of the time of filing of the Complaint (and after months of discussion between counsel about just how Norfolk Southern had calculated its damages), clarity about how the demurrage ETA and service credits were calculated and aggregated remained out of reach. *Compare*, Exh. K (disclosing that Norfolk Southern "does not keep a record" of how many ETA credits a customer is entitled to receive); Exh. L (disclosing that it "may be impossible" "to go back and explain the basis for each and every service credit on each and every rail car"); *with* Exh. A at 3 (claiming that the information may be available but recovering it would be "incredibly time consuming"). Thus the calculation of the

invoiced amounts (comprising the *entirety* of Norfolk Southern's claimed damages) remains opaque.

Although the Court remains ever hopeful that litigants will conduct discovery in a collegial manner, the practical realities of the adversarial system often intervene. That appears to have been the case here. Norfolk Southern *should have* been more forthcoming in explaining its calculation of the demurrage constituting the damages it seeks to recover. When it became clear that Judge was not willing to accept the invoices at face value (and why should it?), the parties might have engaged in a more open consultation on how the *necessary* information might be produced in an *efficient* and *economical* matter.

Since the documents produced are insufficient to flesh out Norfolk Southern's calculations, Judge contends that it is entitled to an order compelling production of the relevant records and sanctions. It also contends that the transfer of records to an "archive," rendering them effectively inaccessible, is tantamount to spoliation. Norfolk Southern, in the end, professes its willingness to produce the records in question, subject to reasonable limitations or cost-sharing. None of these arguments is specious or clearly in bad faith.

The parties also dispute whether Norfolk Southern's designees, pursuant to Fed. R. Civ. P. 30(b)(6), were adequately prepared. "The persons designated [to testify on an organization's behalf] must testify about information known or reasonably available to the organization." *Id.* The organization's "duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee is personally involved. [It] must prepare the designee to the extent matters are reasonably available, whether from documents, past employees or other sources." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) (internal quotes and cites omitted).

An organization must prepare its designees, "so that they may give complete, knowledgeable and binding answers on behalf of the corporation." *Marker v. Union Fid. Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989). "If it becomes obvious that the deposition representative designated by the corporation is deficient, the corporation is obligated to provide a substitute." *Brazos River Auth.*, 469 F.3d at 433.

Here, Judge contends that both of Norfolk Southern's two witnesses (Parr and Cape) were unable to specifically explain the demurrage calculation. How can Judge muster a proper defense when it cannot fully

8

understand the damages claimed? Norfolk Southern contends it met its duty to sufficiently respond to discovery asking for these calculations and produce witnesses responsive to the noticed deposition topics (doc. 67 at 8-9), and faults Judge for not invoking magical language asking for more specifically tailored categories or for backups of records Judge was unaware of until after Norfolk admitted their existence. *See, e.g., id.* at 8 ("Judge has never served written discovery requesting production of NS's backup ESI data on service credits . . . . And Judge completely ignores the fact that Norfolk Southern has already produced *thousands* of pages of documents in this case which provide the basis for each and every service credit that Judge disputed with Norfolk Southern, or that Norfolk Southern reviewed and evaluated on its own for potential inaccuracies.").

Indeed, Norfolk Southern explains that it has provided a detailed reference guide for Judge to navigate its produced responsive documents to suss out this information for itself. *Id.* (citing *id.*, Exh. B (discovery responses identifying certain documents)). As to its witnesses, when given reference documents, Ms. Parr was able to testify to the basis for an exemplar service credit adjustment. Parr Depo. at 37. But she was unable to illuminate how the single column aggregates for service credits were

calculated. *See id.* at 145. Again, these sums are not reached out of thin air. Norfolk Southern has a duty to demonstrate how its damages are calculated.[4]

Complicating the posture of this dispute, Judge has moved to stay the entire case so that the demurrage rates can be challenged before the Surface Transportation Board. *See* doc. 48. Norfolk Southern opposes, noting that it has not raised any issue within the Board's jurisdiction and does not intend to. *See* doc. 51. Judge responds that such assurances are cold comfort, given that Norfolk Southern has invoked the Board's

---

[4] The transcript of Cape's deposition includes a heated exchange between counsel about whether he or Parr is the proper witness to provide details concerning particular demurrage calculations. *See* doc. 61-3 at 26-27. Judge, understandably, objects to the morass of technical terminology as a willful attempt by Norfolk Southern to frustrate discovery. *See generally* doc. 73. It argues that Norfolk Southern's tactics are analogous to the Carrollian wordplay this Court criticized in *Malautea v. Suzuki Motor Corp.*, 148 F.R.D. 362, 366 (S.D. Ga. 1991) (quoting Lewis Carroll, *Through the Looking Glass*). One significant difference between the circumstances in *Malauetea* and this case is the maturity of the proceeding. There, the Court had already ruled on the defendant's discovery objections. *See id.* at 370 (pointing out "the Defendants' cavalier attitude *toward this Court's discovery orders*." (emphasis added)). Norfolk Southern, however tenuous their semantics, is not attempting to circumvent the Court's discovery orders. However, the Court *now* makes clear that the basis of Norfolk Southern's calculation of the demurrage *is discoverable*. The parties may have the opportunity to delve further into the details before the Surface Transportation Board. Even if they don't, the Court expects that any further discussions between the parties about the most efficient means of conveying that information will take place with the understanding that it *will* be produced. The Court also notes that further verbal gamesmanship concerning this information will, in light of this Order, bear a resemblance to *Malautea* that Norfolk Southern would do well to recognize.

10

jurisdiction to unwind an unfavorable case, *post-judgment*. *See* doc. 57 at 3-5. Further, the question Judge urges be presented to the Board seems to have direct implications for the question of the demurrage charges at issue in the present motion.

Judge contends that the Board has exclusive jurisdiction to determine whether the demurrage charges, and their manner of calculation, are reasonable and, thus, enforceable. *See* doc. 48 at 23. If the District Judge refers this matter to the Board, and *if* the Board found that the demurrage charges were unreasonable, it seems that Norfolk Southern's claim would be narrowed, if not mooted entirely (*i.e.* if the demurrage Norfolk Southern seeks is not enforceable at all, then the manner of calculating the specific amount becomes moot). It also seems likely that in reaching a decision on that question, the Board would investigate the bases of Norfolk Southern's demurrage calculus.

On the one hand, it is absolutely clear that Norfolk Southern must prove the amount of its damages, as a component of its case-in-chief. On the other hand, this Court's wading into a dispute that has clearly gone off the rails risks duplication of efforts that may be better discharged, in the first instance, by the Board. The Clerk is, therefore, **DIRECTED** to

administratively **TERMINATE**, in part, the pending discovery motion. Doc. 61. If the District Judge grants the stay and transfers this case to the Board, and any discovery disputes (including possible fee shifting or sanctions awards) that remain, the parties may renew them at the appropriate time. If the District Judge determines that there is no issue for the Board's determination, within 30 days of the issuance of this Order, the parties shall confer, focusing specifically on the most efficient means to provide Judge with a *clear* and *complete* accounting of the bases of the demurrage charges and any remaining issues allocating the cost of these discovery motions or production of the information. The Court will also be prepared to consider, at that time, whether to allow further deposition of either or both of Norfolk Southern's designees who have provided testimony about the demurrage calculations. *See* Fed. R. Civ. P. 30(a)(2). In effect, fact discovery will reopen for the limited purpose of providing Judge an opportunity to investigate Norfolk Southern's demurrage calculations. If the parties are not able to reach a resolution without the need for the Court's intervention, they may file additional motions.

### B. Counterclaim Discovery

In addition to its objections to Norfolk Southern's discovery conduct

related to its demurrage calculations, Judge also objects to the discovery Norfolk Southern provided concerning the counterclaim. Judge's counterclaim concerns an improvement to its warehouse facilities -- a portion of track the parties refer to as "the curve" -- that, it contends, Norfolk Southern refused to use. By its refusal, Norfolk Southern deprived Judge of the additional profits it would have made from the expanded capacity. *See* doc. 61 at 11. Norfolk Southern disputes whether it was contractually obligated to use the additional space; in effect it argues that, under the parties' contract, it could decline to use the curve for any reason or no reason. *See* doc. 67 at 19-20 (noting that the contract "provides local discretion" for use of the curve, so whether it could have been used has "no bearing on Norfolk Southern's liability for Judge's counterclaims."). Despite that contention, Norfolk Southern volunteers its willingness to stipulate to some version of the facts, though it's response doesn't specify what it might stipulate. *See id*. at 21.

Given the apparent breakdown in communication between the parties, and Judge's unrebutted allegations that Norfolk Southern has not been diligent in negotiating the stipulation, the Court will accelerate the process. The Court, therefore, provisionally **GRANTS in part** Judge's

request. *See* doc. 61 at 23. It shall be established that Norfolk Southern could safely and properly spot the curved portion of the track at all times relevant to this lawsuit. Norfolk Southern shall have seven days from the date of this Order to request that the Court modify or qualify its statement of the fact.

### C. Privilege Claims

The parties' final dispute concerns an ambiguous assertion of attorney-client privilege by Norfolk Southern. Doc. 61 at 16-17 & 24; *see id*. at Exh. S (advising that witness Brig Burgess had no documentation responsive to the subpoena "other than" privileged communications); doc. 67 at 20-21 (arguing that Burgess did not specifically testify that he exchanged *emails* with counsel, only that he had spoken with counsel by telephone). A former Norfolk Southern employee, Brig Burgess, was served with a subpoena to testify and provide documents. Norfolk Southern, without conceding the existence of any communications, contends that *any* communications between its counsel and Burgess are privileged as he is a former employee.[5]

---

[5] Shortly before he was deposed, Burgess agreed to be represented by Norfolk Southern's counsel. *See* doc. 61 at 16. Judge concedes that communications after he was represented by Norfolk Southern's counsel are privileged. At most, Judge seeks

Norfolk Southern's assertion that any communications are privileged because of Burgess' status as its former employee is overstated. It is correct that communications between a former employee and his employer's counsel *may* be privileged, even if that counsel does not represent the former employee. The privilege is limited, however, "to communications about 'the former employee's conduct and knowledge, or communication with defendant's counsel, during his or her employment. [Cit.] Communications that are not privileged would be those between the former employee and the employer's attorney (who does not represent the former employer) 'which bear on or otherwise potentially affect the witness's testimony, consciously or unconsciously.'" *In re Morning Song Bird Food Litigation*, 2017 WL 7512980 at * 3 (S.D. Fla. Nov. 30, 2017) (quoting *Peralta v. Cendant Corp.*, 190 F.R.D. 38, 41 (D. Conn. 1999)).

Given that a former employee's communications with his former employer's counsel are not *per se* privileged, and Norfolk Southern has refused to indicate whether any communications (prior to the date at which its counsel undertook representation) exist, the Court is not in a

---

any communications prior to the date when representation commenced or a privilege log of any communications before that date which Norfolk Southern claims are privileged. *See id.* at 24.

position to compel production of such documents.  Norfolk Southern is, however, **ORDERED** to amend its responses to Judge's requests to identify *all* documents that *Norfolk Southern*[6] believes both exist and came into witness Brig Burgess' possession prior to the date Burgess became represented by Norfolk Southern (October 2, 2017).  To the extent Norfolk Southern contends such communications are privileged due to Burgess' prior employment, it may include a privilege log.  *But see Universal City Dev. Ptnrs., Ltd. V. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 695 (M.D. Fla. Sept. 23, 2005) (finding 2.5 month delay constituted waiver of an assertion of attorney-client privilege over requested documents), and *Wormuth v. Lammersville Union Sch. Dist.*, 2017 U.S. Dist. LEXIS 89181 at *11 (E.D. Cal. June 8, 2017) (affirming a ruling that two month delay was sufficient to constitute waiver of attorney-client privilege over requested documents), cited in doc. 61.  If no documents exist, Norfolk may simply say so and resolve the issue.

---

[6] Arguing that Judge must prove the existence of documents it has no ability to access outside of a document production request in order to request their production (doc. 67 at 22) is quite the reinterpretation of Norfolk Southern's discovery obligations. It does not hold water in this Court.

**D. Fees**

Given that Norfolk Southern has not actually denied that it failed to (1) disclose the raw data existed to begin with or provide detailed records underlying their own claims for damages, (2) produce responsive documents or (at least) a privilege log regarding responsive communications with Burgess, or (3) produce witnesses able to testify to the categories identified,[7] Judge's request for fees is neither unwarranted nor meritless. Payment of expenses (including attorney's fees) typically is mandatory when, "after giving an opportunity to be heard," courts grant motions to compel. Fed. R. Civ. P. 37(a)(5)(A). Only if (1) "the movant filed the motion before attempting in good faith to obtain the . . . discovery without court action;" (2) the failure to respond was justified; or (3) "other circumstances make an award of expenses unjust, may a court decline to award expenses to a prevailing party." *Id.* None of those exceptions apply here, and Norfolk Southern had its chance to be heard. Consequently, it must now pay Judge's "reasonable expenses incurred in making" its

---

[7] The Court remains skeptical that quibbling over Judge's application of defined terms *provided by Norfolk Southern* comprises good cause to fail to produce witnesses that could meaningfully explain those terms and their application to the produced invoices.

motion to compel, "including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). The parties shall further meet and attempt resolution of this sub-issue within the time for renewing Judge's discovery motion related to the demurrage calculation, short of which the Court will resolve it (in which case, Judge must then file an itemized list of expenses and fees so the Court can evaluate its reasonableness and issue an expense award).

## II. CONCLUSION

The Motion to Compel further information on Norfolk Southern's demurrage calculation is **TERMINATED** with leave to refile, pending disposition of the motion to refer questions to the Surface Transportation Board. The Court **GRANTS** Judge's request that it be established, for all purposes, that Norfolk Southern could safely and properly spot the curved portion of the track at all times relevant to this lawsuit. Norfolk Southern may respond, within seven days of the date of this Order, and propose an amended stipulation. The Court **GRANTS** Judge's request for further information on Norfolk Southern's claim that communications with its former employee, Brig Burgess, are protected by attorney-client privilege.

Finally, the Court **GRANTS** Judge's request for fees. In summary, Judge's motion (doc. 61) is **TERMINATED, in part**, and **GRANTED, in part**.

**SO ORDERED,** this <u>22nd</u> day of October, 2018.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA