FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2019 SEP 10 AM 9:52

CLERK _____
SO. DIST. OF GA.

# IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

NORFOLK SOUTHERN RAILWAY      )
COMPANY,                      )
                             )
    Plaintiff,           )
                             )
v.                           ) CASE NO. CV416-265
                             )
JUDGE WAREHOUSING, LLC,       )
                             )
    Defendant.           )
_____ )

## O R D E R

Before the Court is Defendant Judge Warehousing, LLC's Motion to Stay Case and Refer Questions to the Surface Transportation Board. (Doc. 48.) For the following reasons, Defendant's motion is **GRANTED**.

### BACKGROUND

This action was filed by Plaintiff Norfolk Southern Railway Company ("Norfolk Southern") to recover demurrage charges allegedly owed by Defendant Judge Warehousing, LLC ("Judge"). (Doc. 1 at 2.) Pursuant to 49 U.S.C. § 10746, Norfolk Southern established rules related to the assessment and computation of rail car demurrage charges. (Id.) A demurrage fee is a "charge that both compensates rail carriers for the expenses incurred when rail cars are detained beyond a specified period of time (i.e., free time) for loading or unloading, and serves as a penalty for undue car detention to encourage the efficient use

of rail cars in the rail network." 49 C.F.R. § 1333.1; see also Norfolk S. Ry. Co. v. Groves, 586 F.3d 1273, 1276 (11th Cir. 2009) (describing demurrage as charges for delay in releasing transportation equipment and explaining the purposes as " 'secur[ing] compensation for the use of the car and of the track which it occupies' " and " 'promot[ing] car efficiency by providing a deterrent against undue detention.' " (quoting Turner, Dennis & Lowry Lumber Co. v. Chicago, Milwaukee & St. Paul Ry. Co., 271 U.S. 259, 262, 46 S. Ct. 530, 531, 70 L. Ed. 934 (1926))). Plaintiff Norfolk Southern is a rail carrier that provides service to Defendant Judge. (Doc. 1 at 1; 3.) Norfolk Southern alleges that it released rail cars into the possession of Defendant Judge, that Defendant Judge accepted the delivery of the rail cars, and that Defendant Judge failed to return possession of the rail cars to Norfolk Southern within the allotted "free time" prescribed by the demurrage tariffs. (Id. at 3.) As a result, Norfolk Southern contends that Defendant Judge has accrued outstanding demurrage charges between October 2013 and March 2016 totaling $951,025.00. (Id.)

On November 22, 2017, Defendant Judge filed its Motion to Stay Case and Refer Questions to the Surface Transportation Board requesting that this Court stay the action and refer certain questions to the Surface Transportation Board ("STB") pursuant to the doctrine of primary jurisdiction and 49 U.S.C.

§ 10501. (Doc. 48 at 1.) Defendant Judge argues that Plaintiff Norfolk Southern has created an unreasonable system for assessing and computing demurrage charges and that, because adjudication of Norfolk Southern's claim "requires the consideration of whether certain rules and practices . . . are unreasonable in violation of 49 U.S.C. § 10702 and 10746," the STB should handle these questions due to its special expertise and competence. (Id.)

Specifically, Defendant Judge contends that Plaintiff Norfolk Southern assesses demurrage on Judge unless Judge can assert an affirmative defense recognized by Norfolk Southern and that Norfolk Southern utilizes an undisclosed, unpublished memorandum in lieu of any provisions in its tariff to determine when, and in what circumstances, to grant demurrage relief. (Doc. 48 at 6-7.) Judge contends that this practice is unreasonable because Judge has no way of knowing what demurrage defenses are acceptable to Norfolk Southern and the decision of whether to grant relief is left to the discretion of Norfolk Southern. (Id. at 7.) Judge also contends that Norfolk Southern creates a backlog of rail cars due to its service errors, namely when Norfolk Southern delivers only 27 rail cars, and leaves the remaining rail cars on constructive placement, instead of actually placing those cars with Judge when it knows that Judge can accommodate 30 rail cars. (Id. at 9.)

Judge also argues that Norfolk Southern is unreasonable in some of its practices which allows demurrage to accrue to Judge that is not due to Judge. Judge argues that Norfolk Southern's refusal to switch Judge's facility on weekends, despite charging demurrage, is unreasonable as well as the fact that Norfolk Southern collects demurrage caused by "bunching." (Id. at 10.) "Bunching" occurs when rail cars destined for one facility are held together in "bunches" and then released at the same time which can overwhelm the receiving facility. (Id.) Related to the bunching complaint, Defendant Judge contends that Norfolk Southern once operated a program wherein it "calculated an estimated delivery window for each rail car and would offer certain credits ("ETA credits") for each day that the car was delivered either before or after that window." (Id. at 11.) Judge claims that it received ETA credits amounting to tens of thousands of dollars to alleviate the demurrage charges incurred due to bunching but that Plaintiff Norfolk Southern decided in June 2015 that it would no longer provide ETA credits unless Judge entered into a separate contract. (Id. at 12.) Judge maintains that it was never notified of the decision to stop providing ETA credits or the requirement to sign a contract until May 2017 and that, in effect, Norfolk Southern simply stopped providing ETA credits with little or no explanation as to why. (Id.) Judge argues that Norfolk Southern's decision to

unilaterally suspend the provision of ETA credits in absence of a signed contract, resulting in approximately $187,900 in demurrage charges, was unreasonable and that Norfolk Southern should provide Judge with the ETA credits it would have been entitled to receive. (Id. at 12-13.) Relatedly, Judge contends that Norfolk Southern arbitrarily caps the total amount of credits it will provide, even when Judge is entitled to credits due to service errors. (Id. at 13.) Judge additionally contends that Norfolk Southern causes demurrage to accrue to Judge by delivering freight after the agreed upon "service window" thereby making it impossible for Judge to unload it by the "cutoff" time imposed by Norfolk Southern. (Id. at 13.) Finally, Judge argues that Norfolk Southern's practice of not delivering rail cars on a first-in/first-out basis is unreasonable because it causes demurrage to accrue. (Id. at 15.)

Accordingly, Defendant Judge contends that the following issues should be referred by this Court to the STB under the doctrine of primary jurisdiction:

> 1. In order to recover from Judge, must [Norfolk Southern] prove that the demurrage that allegedly accrued occurred because the rail car could not "be actually placed because of any condition attributable" to Judge? Or may [Norfolk Southern] grant relief only on grounds contained in an unpublished internal operating memorandum where its Tariff recognizes no grounds for demurrage relief?

2. Is demurrage attributable to Judge, and therefore recoverable, where it accrues on days where [Norfolk Southern] will not spot rail cars at Judge's facility?

3. Is demurrage attributable to Judge, and therefore collectible, where it accrues as a result of bunching?

4. Can [Norfolk Southern] unilaterally, and without notice, cease providing ETA credits which mitigate demurrage caused by bunching after providing this relief for years?

5. Can [Norfolk Southern] arbitrarily limit the credits it provides to offset bunching by capping the relief provided and deducting from it any service credits provided?

6. Is demurrage attributable to Judge where it accrues because [Norfolk Southern] failed to deliver the rail car within the agreed upon service window, rending Judge unable to unload it before the [Norfolk Southern]-imposed cutoff time?

7. Is demurrage attributable to Judge where it accrued because [Norfolk Southern] did not deliver rail cars on a first-in/first-out basis?

8. Does [Norfolk Southern] reasonably calculate demurrage where it assesses demurrage on the backlog of rail cars that results from its service errors?

(Doc. 48 at 23-34.) Judge contends that "this case raises several questions about the reasonableness of [Plaintiff Norfolk Southern's] demurrage charges, namely whether they can be said to result from some condition 'attributable to' Judge," and that "these issues have been placed within the special competence of the STB by the regulatory scheme of the ICCTA." (Doc. 48 at 20.)

Thus, pursuant to the doctrine of primary jurisdiction, these issues should be referred to the STB to promote uniformity and permit the agency to exercise its expertise in this regulated area. (Id.) In response, Norfolk Southern contends that the filing of the motion to stay and refer to the STB is largely a delay tactic and that Judge presents no issues that this Court is incapable of ruling on. (Doc. 51 at 1.)

## ANALYSIS

"The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." United States v. W. Pac. R. Co., 352 U.S. 59, 63, 77 S. Ct. 161, 165, 1 L. Ed. 2d 126 (1956). Thus, primary jurisdiction arises where

> a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

Id. While "no fixed formula exists for applying the doctrine of primary jurisdiction," the core consideration is whether the question raises "issues of transportation policy which ought to be considered by the [Interstate Commerce Commission ("ICC")] in

the interests of a uniform and expert administration of the
regulatory scheme laid down by [the Interstate Commerce Act]."
Id. The STB is a successor to the ICC. DHX, Inc. v. Surface
Transp Bd., 501 F.3d 1080, 1082 (9th Cir. 2007).

Although various circuits have developed factors to guide
their decision on whether to refer an issue to an agency, most
courts generally apply the same considerations. The United
States Court of Appeals for the First Circuit considers "(1)
whether the agency determination l[ies] at the heart of the task
assigned the agency by Congress; (2) whether agency expertise
[i]s required to unravel intricate, technical facts; and (3)
whether, though perhaps not determinative, the agency
determination would materially aid the court." Pejepscot Indus.
Park, Inc. v. Maine Cent. R. Co., 215 F.3d 195, 205 (1st Cir.
2000) (citation omitted) (alteration in original). The United
States Court of Appeals for the Fifth Circuit has stated that
referral to an agency pursuant to the doctrine of primary
jurisdiction is favored when "it will promote even-handed
treatment and uniformity in a highly regulated area or when
sporadic action by federal courts would disrupt an agency's
delicate regulatory scheme" and when "the agency possesses
expertise in a specialized area with which the courts are
relatively unfamiliar." Mercury Motor Exp., Inc. v. Brinke, 475
F.2d 1086, 1092 (5th Cir. 1973) (internal quotation marks and

citations omitted). Similarly, the United States Court of Appeals for the Eleventh Circuit has stated that "[t]he main justifications for the rule of primary jurisdiction are the expertise of the agency deferred to and the need for a uniform interpretation of a statute or regulation." Boyes v. Shell Oil Prod. Co., 199 F.3d 1260, 1265 (11th Cir. 2000) (citing County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1310 (2d Cir. 1990)); see also Sierra v. City of Hallandale Beach, Fla., 904 F.3d 1343, 1351 (11th Cir. 2018).

Thus, this Court first considers whether the questions raised by Defendant Judge arise in areas that the STB has expertise. This requires a consideration of the claims brought by Plaintiff Norfolk Southern and the defenses raised by Defendant Judge. Plaintiff Norfolk Southern contends that this action is a simple demurrage collection dispute in which referral is neither necessary nor appropriate. Defendant Judge, however, contends that Norfolk Southern seeks to recover demurrage charges that are unreasonable under 49 U.S.C. § 10702 and that, therefore, some of the demurrage charges should not have been assessed against Judge and are not collectible.

Pursuant to 49 U.S.C. § 10702, Norfolk Southern "shall establish **reasonable** (1) rates, to the extent required by section 10707, divisions of joint rates, and classifications for transportation and service it may provide under this part; and

(2) rules and practices on matters related to that transportation or service." (emphasis added). Numerous courts have found that questions regarding the reasonableness of tariffs, rules, regulations, and practices of carriers falls within the expertise of the ICC, now the STB. See Union Pac. R. Co. v. FMC Corp., No. CIV.A. 99-CV-200, 2000 WL 134010, at *3 (E.D. Pa. Feb. 3, 2000) (concluding that the reasonability of a railroad's practice of applying newly imposed demurrage tariffs to rail cars that are already placed or en route to their destinations "falls squarely within the primary jurisdiction of the STB."); Illinois Cent. R.R. v. S. Tec Dev. Warehouse, No. 97 C 5720, 1999 WL 519042, at *2 (N.D. Ill. July 15, 1999) (referring to the STB consideration of whether the demurrage rate is unreasonable, whether the method by which the demurrage charge is calculated is unreasonable, and/or whether the practice by which demurrage charges accrue is discriminatory); Wheeling & Lake Erie Ry. Co. v. Teck Cominco Metals, Ltd., No. 5:09CV1184, 2009 WL 10690078, at *2 (N.D. Ohio Oct. 29, 2009) (finding that a determination of whether the rail carrier's practice of collecting demurrage charges, under the facts presented, is an unreasonable practice is a determination that falls within the expertise of the STB); Springfield Terminal Ry. Co. v. Fore River Warehousing & Storage Co., No. CIV 07-52-P-S, 2007 WL 2344970, at *6 (D. Me. Aug. 15, 2007), report and

recommendation adopted sub nom. The Springfield Terminal Ry Co. v. Fore River Warehousing & Storage Co., No. CIV.07-52-P-S, 2007 WL 2572435 (D. Me. Sept. 6, 2007) (collecting cases and stating that "there is precedent for referral to the STB of questions regarding the reasonableness of rates charged via tariff by a railroad subject to the STB's jurisdiction, including demurrage rates.").

"When, as here, 'claims require not only legal analysis, but also an informed evaluation of the economics or technology of the regulated industry[,]' that fact counsels in favor of a primary-jurisdiction referral." Springfield Terminal Ry. Co., 2007 WL 2344970, at *6 (quoting DeBruce Grain, Inc. v. Union Pac. R.R. Co., 149 F.3d 787, 789 (8th Cir. 1998)). Defendant Judge questions the reasonableness of assessing demurrage on days Plaintiff Norfolk Southern will not spot rail cars at Judge's facility, the reasonableness of Norfolk Southern capping credits it provides despite the fact that Defendant Judge may be entitled to more due to service errors, and the reasonableness of assessing demurrage on rail cars that were not delivered within the agreed upon service window, thereby rendering Defendant Judge unable to unload it before the cutoff time, among other practices. The questions raised by Defendant Judge implicate numerous elements of railway economics and industry

practices that are better committed to the experience and expertise of the STB.

Plaintiff Norfolk Southern, however, contends that "warehousemen like Judge have increasingly employed motions to refer demurrage disputes to the STB, **without success**." (Doc. 51 at 8 (emphasis in original).) To support this contention, Plaintiff Norfolk Southern cites to CSX Transportation, Inc. v. Piper Warehouse, Inc., No. 1:16-CV-1805-RLY-DML, 2017 WL 3106284, at *1 (S.D. Ind. June 15, 2017), and Norfolk Southern v. C.L. Consulting and Management Corp., No. 15-cv-02548 (D. N.J. Jan. 11, 2016).

First, the Court finds the reasoning in Norfolk Southern v. C.L. Consulting and Management Corp., No. 15-cv-02548 (D. N.J. Jan. 11, 2016), to be inapplicable to this case. The district court stated that the defendant sought referral on two bases: first, the defendant claimed that a recent decision and rule change by the STB made the case an ideal test case for the STB, and second, the matter should be heard by the STB under the doctrine of primary jurisdiction. (Doc. 51, Attach. 1 at 5-6.) The court noted that the defendant was contending that the STB's expertise should be utilized pursuant to the doctrine of primary jurisdiction because "the primary issue here is whether plaintiff provided [the defendant] notice of the demurrage charges." (Id. at 7.) The court found that referral was

unwarranted because the new rule did not go into effect until after the demurrage charges at issue in the case accrued and that the case presents a routine demurrage fee case. (Id. at 9-10.) The primary issues in C.L. Consulting, as summarized by the district court, were whether the demurrage charges were properly assessed where the defendant did not receive notice of the charges and the application of a newly enacted rule, which was not effective at the time of the assessment. This instant case is not one that involves a determination of whether a newly enacted STB rule, that was not effective when the charges were assessed, provides demurrage relief. Rather, Defendant Judge presents numerous contentions that the demurrage charges are unreasonable pursuant to 49 U.S.C. § 10702. Thus, this case presents more than mere legal questions.

In Piper Warehouse, the United States District for the Southern District of Indiana denied the motion for a referral to the STB, finding referral unwarranted for its determination of the warehouseman's demurrage liability defenses, including bunching, switching delays, and constructive placement. 2017 WL 3106284, at *4. The court seemed to rely on a number of cases that "denied requests to refer demurrage questions to the STB," to support its own conclusion that it did not need the expertise of the STB to address the warehouseman's demurrage liability defense. However, from this Court's review of those cases,

13

nothing in those cases indicated that those courts, or lower courts in the case of appellate cases, addressed any requests for referrals. Even so, the district court may very well have found that, under the circumstances of the case, the cited cases provided sufficient guidance such that referral to the STB was unnecessary. Plaintiff Norfolk Southern contends similarly that there is sufficient guidance on the issues presented by Defendant Judge such that referral is unnecessary. (Doc. 51 at 13-14.) However, the only specific issue that Plaintiff cites case law on is the bunching issue. (Id. at 14.) Defendant Judge presents eight questions that it seeks referral to the STB.

Additionally, Plaintiff Norfolk Southern contends that all issues presented by Defendant Judge can be resolved by a review of Norfolk Southern's tariff. For example, in regards to Defendant Judge's question regarding Norfolk Southern's practice of not switching cars on the weekend, Plaintiff Norfolk Southern states that its demurrage tariff "expressly states that '[a]ll days count including Saturday and Sundays. . . [s]o demurrage was unquestionably assessed by Norfolk Southern in accordance with its tariff." (Id. at 15.) In the Court's opinion, this fails to address the substance of Defendant Judge's contentions in this case that, even where demurrage was properly assessed in accordance with Norfolk Southern's tariff, such assessment of the demurrage is **unreasonable**.

Ultimately, the Court does not dispute that it can determine the issues in this case, however, the question under the doctrine of primary jurisdiction is not whether the court can hear the case, but whether, under the specific factual circumstances of the case and in light of the agency's expertise in that area and the need for uniformity, the Court ought to refer the questions to the agency to first consider. The Court finds that, under the circumstances of this case, where Defendant Judge contends that numerous portions of Norfolk Southern's tariff is unreasonable pursuant to 49 U.S.C. § 10702, the expertise of the STB would be of great value. In fact, the Court notes that Norfolk Southern claims that, should this Court adopt

> the demurrage requirements being advocated by Judge, and forbid the collection of demurrage unless the railroad (which is not a party to the contracts between the shipper and consignee) can prove it was caused by the consignee, it would remove any incentive for companies using the interstate rail network to manage their use of railcars. It would also completely defeat the reasons Congress statutorily mandated the assessment of demurrage in the first place . . . .

(Doc. 51 at 12-13.) Norfolk Southern appears to argue that this Court, in adjudicating the dispute, could disturb the commercial underpinnings of demurrage charges and alter the policy considerations that guide the resolution of demurrage disputes. The questions, therefore, appear to "raise[] issues of

15

transportation policy which ought to be considered" by the STB "in the interests of a uniform and expert administration of the regulatory scheme." W. Pac. R. Co., 352 U.S. at 65, 77 S. Ct. at 166.

Second, this Court considers whether referral of these questions will promote uniformity. The Eleventh Circuit has "recognized, for example, the importance of uniformity 'especially in cases involving reasonableness of tariffs or rates.' " Sierra, 904 F.3d at 1352 (quoting Brinke, 475 F.2d at 1092). Plaintiff Norfolk Southern contends that because "the demurrage tariff cited in Defendant Judge's motion is no longer even in effect," there is "no need for industry-wide guidance on it in any event." (Doc. 51 at 17.) However, Plaintiff Norfolk Southern does not claim that it has removed or otherwise enacted provisions in the current tariff that eliminate the assessment of demurrage charges as complained about by Defendant Judge. For example, Defendant Judge claims that Plaintiff Norfolk Southern's assessment of demurrage on Saturday and Sunday, despite the fact that it will not switch cars over the weekend, is unreasonable. The current Norfolk Southern Demurrage Tariff also provides that "all days count including Saturday and Sundays."[1] Defendant Judge also contends that Norfolk Southern

---

[1] See April 2019 Norfolk Southern Demurrage Tariff, available at http://www.nscorp.com/content/dam/nscorp/ship/shipping-

arbitrarily caps the total amount of credits it will provide, even when Judge is entitled to credits due to service errors. (Doc. 48 at 13.) From this Court's review of Plaintiff Norfolk Southern's current tariff, a cap on total credits is still in effect. See Item 950(8), April 2019 Norfolk Southern Demurrage Tariff.[2] Moreover, simply because the tariff under which these instant demurrage charges were assessed has been revised and supplanted by a new version, does not remove these questions from the purview of the STB. As discussed above, the STB has expertise in determining the reasonableness of rates and practices created by rail carriers.

The Court also finds that the referral of the issues raised by Defendant Judge to the STB will materially aid this Court in resolving the demurrage collection action. As the Court has previously summarized, Norfolk Southern contends that Defendant Judge owes it $951,025.00 in demurrage charges and Defendant Judge contends that these charges were not reasonable under 49 U.S.C. § 10702. If the STB finds that any of the practices are unreasonable and that demurrage should not be assessed in those instances, such a finding would aid in determining what amount

---

tools/shipping-news-and-alerts/NS-6004-D-Tariff-Revision-eff-4-01-2019.pdf.

[2] As stated above, a copy of the tariff is available at http://www.nscorp.com/content/dam/nscorp/ship/shipping-tools/shipping-news-and-alerts/NS-6004-D-Tariff-Revision-eff-4-01-2019.pdf.

of demurrage charges are owed. In the event that the STB finds the practices to be reasonable, adjudication of the allegations in the complaint becomes a more straightforward demurrage collection action.

Finally, Plaintiff Norfolk Southern contends that Defendant Judge delayed in filing this motion and argues that referral to the STB will result in significant prejudice to Norfolk Southern due to the delays in resolution of this case. (Doc. 51 at 2; 17.) Plaintiff Norfolk Southern argues that the filing the motion to refer thirteen months after this case was initiated is a delay tactic employed by Defendant Judge. (Id. at 1.) In response, Defendant Judge contends that the issues that it seeks referral of did not become clear until discovery had progressed and that it was only able to "understand how [Norfolk Southern] applied its demurrage tariff and how and when it granted demurrage relief" after the October 2017 depositions of Norfolk Southern's corporate representatives. (Doc. 57 at 13-14.) Although the Court acknowledges and appreciates the fact that a referral will delay the resolution of this matter, the Court finds that referral in this case was not untimely sought.

Plaintiff Norfolk Southern notes that the original deadline for filing civil motions was set for February 2018 and that any referral will delay trial on the case. (Doc. 51 at 2.) On January 16, 2018, Magistrate Judge Smith stayed the February 15,

2018 motion deadline until this Court rules on the instant motion to refer. (Doc. 60 at 1.) Other than the prejudice it will experience in a delay in a final conclusion of this case, Plaintiff Norfolk Southern has not presented any other grounds that referral will prejudice its position or that referral to the STB would be so detrimental that referral is unwarranted even in light of the expertise and guidance the STB can provide. The Court appreciates the delay that the parties will experience due to a referral to the STB. However, in light of the fact that fact discovery has seemingly been largely completed, the Court finds that referral to the STB will aid this Court in reaching a decision expeditiously once a final order is issued by the STB. Thus, weighing the delay that Plaintiff Norfolk Southern will experience in the issues being referred to the STB against the benefits of such a referral, the Court finds that referral is warranted under the doctrine of primary jurisdiction.

## CONCLUSION

For the foregoing reasons, Defendant Judge's Motion to Stay Case and Refer Questions to the Surface Transportation Board (Doc. 48) is **GRANTED**. As a result, this case is hereby **REFERRED** to the STB for determination of the eight questions delineated by Defendant Judge pertaining to whether Plaintiff Norfolk Southern's collection of the demurrage charges at issue in this case constitute an unreasonable practice under 49 U.S.C. §

10701. (See Doc. 48 at 23-24.) The parties are **DIRECTED** to confer and to immediately take all actions necessary to bring these questions before the STB. The parties are further **DIRECTED** to provide the Court with a status report on December 1, 2019 and every ninety days thereafter. The Clerk of the Court is **DIRECTED** to **STAY** and **ADMINISTRATIVELY CLOSE THIS CASE**. This order shall not prejudice the rights of the parties to this litigation. Upon final resolution by the STB, the parties may seek to have the stay lifted and the case reopened.

SO ORDERED this _9th_ day of September 2019.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA